WHIPPLE, C.J.
| ¿This matter is before us on appeal by plaintiffs, Brenda Jones and Mario Jones, Jr,, from a judgment of the trial court granting summary judgment in favor of defendant, GoAuto Insurance Company (“GoAuto”). For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
On June 1, 2016, after coming to a stop at a light-controlled intersection on Florida *415 Boulevard in Baton Rouge,[1] the vehicle Brenda Jones was driving was hit in the rear by a vehicle driven by Jason Anderson. Her adult step-son, Mario Jones, Jr., was riding as a guest passenger in the vehicle at the time of the accident. Brenda Jones and Mario Jones, Jr. (hereinafter “plaintiffs”) subsequently filed suit against Anderson and GoAuto Insurance Company for damages allegedly sustained as a result of the collision.
GoAuto answered plaintiffs’,petition and asserted affirmative defenses, contending that the automobile liability insurance policy issued to Anderson by GoAuto was financed through an insurance premium finance agreement entered into by Anderson and Auto Premium Assistance Company, LLC (“APAC”) and that the policy was cancelled effective May 24, 2015, due to Anderson’s nonpayment of a premium installment. Thus, GoAuto averred it was not the liability insurer of Anderson at the time of the, collision herein.[2]
GoAuto subsequently filed a motion for summary judgment and dismissal of plaintiffs’ claims, seeking a judgment declaring that the policy issued to Anderson was cancelled prior to the accident of June 1, 2015, that GoAuto was not liable for |athe damages alleged by plaintiffs, and that GoAuto had no duty to provide a defense to Anderson for any damages alleged.
In support of its motion for summary judgment, GoAuto offered: (1) the affidavit of Angela Pittman, APAC’s operations manager; (2) the GoAuto insurance policy for the six-month coverage period of July 25, 2014 to January 24, 2015; (3) the July 25,2014 Consumer Insurance Premium Finance Agreement Anderson entered into with APAC; (4) the renewal policy declarations sheet for the next coverage period of January 27, 2015 through July 29, 2015; (5) APAC’s May 14, 2016 email to Anderson with attached “TEN (10) DAY NOTICE OF CANCELLATION”; (6) Ms. Pittman’s affidavits of proof of emailed notices to GoAuto; (7) APAC’s letter to GoAuto dated May 24, 2015, requesting cancellation of the policy; and (8) plaintiffs’ answers to interrogatories and requests for admissions of fact. ' "
GoAuto contends that this evidence established that GoAuto issued Anderson an automobile liability insurance policy bearing number 320107, which provided coverage from July 25, 2014 to January 24, 2015, and that Anderson opted to make a down payment on the policy premium and finance the balance of the premium through APAC pursuant to a Consumer Insurance Premium Finance' Agreement entered into on July 25, 2014, through which Anderson agreed to pay a Promissory Note for the balance of the premium. According to the agreement, Anderson requested that APAC use his email address “for all notices required bylaw” Pursuant to the agreement, Anderson further conferred power of attorney to APAC, authorizing APAC to cancel his policy should he fail to pay a premium installment, which GoAuto contends happened herein.
According to GoAuto, upon the expiration of the policy period, Anderson renewed his policy and was issued policy number 320107-12, which provided coverage from January 27, 2015 to July 29, *416 2015. According to Ms. Pittman’s | ¿affidavit, Anderson again opted to make a down payment on the premium and finance the balance of the premium through APAC. According to GoAuto, after Anderson failed to submit his monthly installment payment due May 13, 2015, APAC emailed Anderson a late notice on May 14, 2015, explaining that “[t]his marks the beginning of your 10 day late notice period, after which your policy will be can-celled and you will owe fees required to reinstate” and attached a “TEN (10) DAY NOTICE OF CANCELLATION.” The notice of cancellation provided that the policy would be cancelled effective 12:01 a.m. on May 24, 2015, if the delinquent installment was not received. APAC did not receive the premium installment before May 24, 2015. Thus, exercising the power of attorney conferred upon it by Anderson in the finance agreement, APAC sent a letter to GoAuto requesting cancellation of the policy for non-payment of premium pursuant to the requirements set forth in LSA-R.S. 9:3550(G)(3)(a). The letter was signed by Ms. Pittman as APAC’s authorized representative.
Following the cancellation of the policy on May 24, 2015, Anderson appeared on June 1, 2015, at 5:04 p.m., after the instant accident herein, and paid the premium installment that was due on May 13, 2015, thereby reinstating the policy. According to Ms. Pittman, no automobile liability coverage existed for Anderson under policy number 320107-12 (or any other GoAuto policy) between the cancellation date of May 24, 2015, and the time of the accident, approximately 3:57 p.m., on June 1, 2015.
Plaintiffs filed a memorandum in opposition to GoAuto’s motion for summary judgment. Although plaintiffs did not offer any documents or exhibits in support of their opposition, they contended that the evidence set forth by GoAuto failed to establish that GoAuto was entitled to judgment as a matter of law.[3]
|fiFollowing a hearing, the trial court granted GoAuto’s motion for summary judgment. In its oral reasons, the trial court found that GoAuto had complied with the laws governing the cancellation of coverage and that accordingly, there was no insurance coverage in effect at the time of the accident. A written judgment was subsequently signed by the trial court on August 1, 2016, granting GoAuto’s motion for summary judgment and dismissing plaintiffs’ claims against it. The judgment further declared that GoAuto had no duty to provide a defense to Anderson in this action.
Plaintiffs filed the instant appeal, contending that the trial court erred in:
(1) finding there was no coverage afforded to Anderson on June 1, 2015;
(2) concluding that GoAuto complied with the laws governing cancellation of insurance;
(3) finding that GoAuto complied with the laws governing cancellation of insurance, which necessarily includes a finding that GoAuto received a valid- cancellation request from a mandate who had authority to make such request;
(4) finding that GoAuto could effectively cancel coverage to Anderson without providing Anderson with a written, mailed notice of cancellation;
(5) finding that the cancellation of insurance coverage could stem from a premium finance company agreement, which *417 created a power of attorney on behalf of an entity;
(6) finding that a cancellation notice of the finance company was valid as to Anderson where there was no proof of mailing of the notice from the finance company to the insurance company pursuant to LSA-R.S. 9:3550;
(7) finding that the notice sent to Anderson by APAC was effective notice of cancellation by GoAuto;
(8) finding there was a valid power of attorney allowing APAC to act as mandatory and cancel the insurance policy issued by GoAuto; and
|fi(9) finding that GoAuto complied with the laws governing the cancellation of coverage to Anderson to be performed by Ms. Pittman, who has never been given authority as a mandatory of Anderson.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. All Crane Rental of Georgia, Inc. v. Vincent, 2010-0116 (La. App. 1st Cir. 9/10/10), 47 So.3d 1024, 1027, writ denied, 2010-2227 (La. 11/19/10), 49 So.3d 387. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. LSA-C.C.P. art. 966(A)(4).
The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
Appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Bouquet v. Williams, 2016-0134 (La. App. 1st Cir. 10/28/16), 206 So.3d 232, 237, writs denied, 2016-2077 (La. 1/9/17), 214 So.3d 870, 2016-2082 (La. 1/9/17), 214 So.3d 871 Thus, appellate courts ask the same questions that the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94), 639 So.2d 730, 750.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law "applicable to the case. Brassette v. Exnicios, 2011-1439 (La. App. 1st Cir. 5/14/12), 92 So.3d 1077, 1081, writ denied, 2012-1583 (La. 11/9/12), 100 So.3d 831.
DISCUSSION
Notice of Cancellation
(Assignments of Error Numbers Two and Four)
In these assignments, plaintiffs contend that GoAuto could not effectively cancel *418 coverage where the ten-day notice of cancellation was not sent by mail or delivered by the insurer as required by LSA-R.S. 22:1266, and that any reliance on the notice sent by APAC to Anderson via email was misplaced, as such notice is not compliant with the applicable requirements of law. We disagree.
It is a well-settled canon of statutory construction that the more specific statute controls over the general statute. Sharp v. Sharp, 2005-1046 (La. App. 1st Cir. 6/28/06), 939 So.2d 418, 421, writ denied, 2006-1877 (La. 11/17/06), 942 So.2d 533. “It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more in character.” Burge v. State, 2010-2229 (La. 2/11/11), 54 So.3d 1110, 1113 (quoting State v. Campbell, 2003-3035 (La. 7/6/04), 877 So.2d 112, 118).
| ^Louisiana Revised Statute 22:1266 sets forth the general notice requirements that must be followed by an insurance company in order to effect a cancellation of an insurance policy. See Wiley v. Cornerstone Insurance Company, 2012-0909 (La. App. 1st Cir. 4/26/13)(unpublished opinion). However, LSA-R.S. 9:3550 sets forth the particular law applicable to any person engaged in the business of financing insurance premiums for consumers entering into premium finance agreements.[4] Because LSA-R.S, 9:3550 specifically regulates the cancellation of insurance policies procured through a premium finance agreement with an insurance premium finance company, it is generally applicable where insurance premiums are financed. See Stephens v. LeBlanc, 2003-1460 (La. App. 1st Cir. 5/14/04), 879 So.2d 262, 264; Hodges v. Colonial Lloyd’s Insurance, 546 So.2d 898, 901 (La. App. 1st Cir. 1989); KMJ Services, Inc. v. Hood, 2012-757 (La. App. 5th Cir. 4/10/13), 115 So.3d 34, 37; Nions v. Richardson, 2010-610 (La. App. 5th Cir. 3/9/11), 62 So.3d 217, 219. Moreover, Louisiana courts require strict adherence to these statutory requirements when a finance company ¡exercises its power of attorney to cancel an insurance policy. Delatte v. Lemotte, 93-0754 (La. App. 1st Cir. 12/29/93), 633 So.2d 686, 689.
The main issue in this appeal is whether there was an efféctive notice of cancellation of Anderson’s renewal policy, which was purportedly financed through APAC. However, as noted by plaintiffs, the premium finance agreement through which Anderson purportedly financed the renewal of his policy for an additional six-month period of coverage from January 27, 2016 through July 29, 2015, was not offered in support ‘of the motion for summary judgment herein. Plaintiffs contend that without the premium finance agreement, GoAuto cannot |flestablish the amount of the premium payments, that Anderson was in default of any terms of the premium finance agreement such as to warrant cancellation of the policy, or that GoAuto was entitled to judgment as a matter of law declaring that the policy was cancelled at the time, of the accident.
The record reflects that Anderson’s initial automobile insurance policy and the consumer insurance premium finance *419 agreement for that policy were offered in support of GoAuto’s motion for summary judgment as Exhibits A and B respectively.[5] The affidavit of the operations manager and records custodian for APAC, Ms. Pittman, also offered in support, establishes that upon the expiration of the first six-month period of policy number 320107, Anderson renewed his automobile insurance policy for a second six-month period. The policy, as renewed, was identified as policy number 320107-12 and provided coverage from January 27, 2015, through July 29, 2015. A copy of the declarations for policy number 320107-12 was attached to GoAuto’s motion for summary judgment as Exhibit C. Also, Ms, Pittman attested in her affidavit that the premium finance agreement executed by Anderson on July 25, 2014, contained a power of attorney clause whereby Anderson appointed Gregory W. Tramontin as his agent, and conferred full power and authority upon his agent to execute, on his behalf, a premium finance agreement related to any renewals of the initial policy of automobile insurance. According to Ms. Pittman’s affidavit, upon the renewal of his initial policy, Anderson again “opted” to make a down payment to GoAuto and finance the balance of the premium through APAC.
Notably, however, the premium finance agreement purportedly executed by Anderson to finance the renewal policy (number 320107-12) was not offered in support of GoAuto’s motion for summary judgment. Plaintiffs contend that | inwithout this agreement, GoAuto failed to establish the terms set forth therein governing the cancellation of the renewal policy, and whether the cancellation of his policy was in compliance with the provisions of LSA-R.S. 9:3550 so as to effectively cancel Anderson’s policy prior to the instant accident. Contrariwise, GoAuto, relying on Ms. Pittman’s affidavit, contends in its brief that “the same terms of the [initial] finance agreement applied” to the finance of the renewal policy’s premium.
On review, however, we note that Ms. Pittman’s affidavit merely establishes that (1) “[t]he Consumer Insurance Premium Finance Agreement [for policy number 320107] also contains a Power of Attorney authorizing Jason Anderson’s agent to execute any Consumer Insurance Premium Finance Agreements resulting from renewals of his policy” and (2) that Anderson opted to make a down payment for his policy number 320107-12, to GoAuto Insurance Company in the amount . of $130.00, with the $559.00 balance of the premium financed through APAC. Notably, Ms. Pittman’s affidavit fails to set forth the terms of the premium finance agreement for the renewal policy (number 320107-12), and further fails to establish that the terms of the premium finance agreement for the renewal policy (number 320107-12) were the same as the terms of the premium finance agreement through which Anderson financed the premiums for his initial policy.
Thus, on review, we are constrained to find that where GoAuto failed to offer the premium finance agreement through which Anderson financed the renewal policy, or otherwise establish the terms of the premium finance agreement by which GoAuto contends it procured the cancellation of Anderson’s policy, we are unable to determine whether the policy was validly can-celled or whether such cancellation was in compliance with LSA-R.S. 9:3550. Accordingly, we find that GoAuto failed to establish that it was entitled to judgment in its *420 favor as a matter |T1of law declaring that the policy issued to Anderson was validly cancelled prior to the accident of June 1, 2015.
CONCLUSION
For these reasons, the August 1, 2016 judgment of the trial court, granting GoAuto’s motion for summary judgment and dismissing plaintiffs’ claims against it, is reversed. Costs of this appeal are assessed against the appellee, GoAuto Insurance Company.
REVERSED.
Mc Clendon, J. dissents and assigns reasons.

. According to the accident report, Anderson reported that plaintiffs’ vehicle came to a sudden complete stop causing him to strike the rear of the vehicle, while Jones reported that she came to a complete stop because the traffic light turned yellow.

. Anderson filed a separate answer, wherein he asserted affirmative defenses of prescription, peremption, no right of action, compara- . tive fault, third party fault, and failure to mitigate damages as to any claims of plaintiffs.

. Anderson did not oppose GoAuto’s motion for summary judgment and dismissal of plaintiffs' claims against it.

. An insurance '‘[p]remium finance agreement” is defined therein as "an agreement by which an insured or prospective insured promises to pay an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent or broker in payment of premiums on an insurance contract together with a service charge as authorized and limited by this Section.” LSA-R.S. 9:3550(B)(4),

. The three-page premium finance agreement is identified at the bottom of each page as the "Finance Agreement for Policy 320107” and sets forth the policy period and an itemization of the amount financed for that particular policy.