ERIC LEWIS

VERSUS

CHARLES JULIEN AND GOAUTO
INSURANCE COMPANY

NO. 20-CA-152

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 73,351, DIVISION "B"
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE, JUDGE
PRESIDING

December 16, 2020

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Robert A. Chaisson

**AFFIRMED**
    **JGG**
    **MEJ**
    **RAC**

COUNSEL FOR PLAINTIFF/APPELLANT,
ERIC LEWIS
Vercell Fiffie

COUNSEL FOR DEFENDANT/APPELLEE,
GOAUTO INSURANCE COMPANY
Michelle DeLoach Brooks
Davis R. Peltier

**GRAVOIS, J.**

Plaintiff/appellant, Eric Lewis, appeals the trial court's judgment of January 3, 2020 which granted summary judgment in favor of defendant/appellee, GoAuto Insurance Company, dismissing Mr. Lewis's suit against it with prejudice. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Eric Lewis filed suit seeking damages for injuries he allegedly sustained in an automobile accident that occurred on January 27, 2018, when a vehicle being operated by Charles Julien collided with his vehicle on Belle Terre Boulevard in St. John the Baptist Parish. Mr. Lewis named as defendants Mr. Julien; Mr. Julien's insurer, GoAuto Insurance Company; and ABC Insurance Company.

Thereafter, on September 9, 2019, GoAuto filed a motion for summary judgment with attachments, arguing that it was entitled to judgment as a matter of law because the insurance policy it issued to Mr. Julien was no longer in effect on January 27, 2018, the date of the accident, due to nonpayment of a premium installment. GoAuto argued that Mr. Julien's policy, which was financed through Auto Premium Assistance Company, L.L.C. ("APAC"), was properly canceled on January 23, 2018 at 12:01 a.m. after Mr. Julien failed to make his installment payment due on January 12, 2018.

In support of its motion for summary judgment, GoAuto submitted the affidavit of Kim McCloud, Underwriting Manager for GoAuto, certifying that Mr. Julien was issued GoAuto policy number 325888-17, which became effective on October 17, 2017. Attached to Ms. McCloud's affidavit was a certified copy of the declarations page of Mr. Julien's GoAuto policy. Additionally, GoAuto attached the affidavit of Angela Pittman, manager for APAC, with the following attached exhibits: the Consumer Insurance Premium Finance Agreement; the Affidavit

Proof of Emailed Notices; the Ten Day Notice of Cancellation; and the January 23, 2018 letter from APAC to GoAuto requesting cancellation of Mr. Julien's policy.

According to the Consumer Insurance Premium Finance Agreement entered into between Mr. Julien and APAC, Mr. Julien was to pay four equal monthly installments of $142.00 due on the 12th day of each month beginning on November 12, 2017, and one installment of $141.00 due on March 12, 2018. The Consumer Insurance Premium Finance Agreement also included within it a power of attorney in which Mr. Julien agreed that if he failed to pay "even one installment," APAC was authorized to cancel his insurance policy and notify his insurance company. After Mr. Julien failed to pay the January 12, 2018 installment, according to the affidavit of Ms. Pittman, on January 13, 2018, Ms. Pittman emailed Mr. Julien at his last known email address a Ten Day Notice of Cancellation. The Ten Day Notice of Cancellation stated that Mr. Julien's policy was canceled effective January 23, 2018 at 12:01 a.m. due to nonpayment of an installment unless he remitted his balance of $227.00 before that date. Ten days later, on January 23, 2018, APAC sent GoAuto a request that it cancel Mr. Julien's policy effective January 23, 2018 at 12:01 a.m. In the letter, APAC certified that the premium finance agreement contains a valid power of attorney; the premium finance agreement is in default and the default had not been timely cured; upon default, a Ten Day Notice of Cancellation was sent to Mr. Julien and a copy of that notice was enclosed; and a copy of the Ten Day Notice of Cancellation was sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder.

In his opposition to the motion for summary judgment, Mr. Lewis argued that summary judgment should be denied because GoAuto failed to comply with La. R.S. 22:1266(D) in that it failed to mail a physical copy of the cancellation letter to Mr. Julien.

In reply, GoAuto argued that cancellation of Mr. Julien's policy was properly made in accordance with La. R.S. 9:3550(G), as evidenced by the documents attached to its motion for summary judgment.

Following a hearing on November 22, 2019, the trial court signed a judgment on January 3, 2020, finding that GoAuto did not provide coverage for the January 27, 2018 accident and Mr. Lewis cannot recover any amount from GoAuto for the injuries sustained in the accident. The judgment granted GoAuto's motion for summary judgment and dismissed GoAuto with prejudice. This appeal followed.

## LAW AND ANALYSIS

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art 966(A)(3). "The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).

Appellate courts review summary judgments *de novo* using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Pizani v. Progressive Ins. Co.*, 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Muller v. Carrier Corp.*, 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

On appeal, Mr. Lewis argues that when an insurance finance company is involved, there is a two-part notice requirement to effectuate cancellation of the insurance policy. Mr. Lewis argues that first, pursuant to La. R.S. 9:3550(G), APAC was required to send notice to Mr. Julien that payment was not received and notify him of when APAC would request that the policy be canceled. This can be done by e-mail. After the passage of ten days, APAC may alert GoAuto to cancel the policy. Mr. Lewis argues that subsequently, pursuant to La. R.S. 22:1266(D), GoAuto was required to mail a copy of the notice of cancellation to Mr. Julien by certified mail. Mr. Lewis argues that there was no evidence presented that GoAuto mailed a notice of cancellation to Mr. Julien by certified mail or by regular mail. Additionally, Mr. Lewis also argues that no evidence was presented as to Mr. Julien's premium payment history related to his policy with GoAuto.

La. R.S. 22:1266 sets forth the notice requirements that must be followed by an insurance company in order to effect a cancellation of an insurance policy. *Blandino v. Pierre*, 16-150 (La. App. 5 Cir. 11/15/17), 230 So.3d 697, 699, *writ denied*, 17-2093 (La. 2/9/18), 236 So.3d 1265.[1] La. R.S. 9:3550 governs the

---

[1] Specifically, La. R.S. 22:1266 (D)(1) provides:

D.(1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason shall be given. In the event of nonpayment of premiums for a binder, a ten-day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for

regulation of premium finance companies. Premium finance agreements are agreements entered into by an insured with a premium finance company wherein the insured promises to pay the premium finance company the amount advanced or to be advanced to an insurer, or an insurance broker or agent for payment of premiums on an insurance policy. La. R.S. 9:3550(B)(4). La. R.S. 9:3550(G) allows a premium finance agreement to contain a power of attorney enabling the premium finance company to cancel any insurance policy when an insured defaults on payments and the premium finance company elects to exercise that authority to effect cancellation of an insurance policy. *KMJ Servs., Inc. v. Hood*, 12-757 (La. App. 5 Cir. 4/10/13), 115 So.3d 34, 37.

It is a well-established rule of statutory interpretation that when two statutes appear to conflict with one another, the more specific statute will prevail over the more general one. *Nunez v. Superior Hosp. Sys., Inc.*, 14-668 (La. App. 5 Cir. 12/23/14), 166 So.3d 1004, 1009. Because La. R.S. 9:3550 specifically regulates the cancellation of insurance policies procured through a premium finance agreement with an insurance premium finance company, it is generally applicable where insurance premiums are financed. *Jones v. Anderson*, 16-1361 (La. App. 1 Cir. 6/29/17), 224 So.3d 413, 418, citing *Stephens v. LeBlanc*, 03-1460 (La. App. 1st Cir. 5/14/04), 879 So.2d 262, 264; *Hodges v. Colonial Lloyd's Insurance*, 546 So.2d 898, 901 (La. App. 1st Cir. 1989); *KMJ Servs., Inc.*, *supra*; *Nions v. Richardson*, 10-610 (La. App. 5th Cir. 3/9/11), 62 So.3d 217, 219; *see also Benitez v. Elsayed*, 19-122 (La. App. 5 Cir. 12/4/19), 285 So.3d 572.[2]

_____

nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to nonrenewal.

[2] In *Jones*, the plaintiffs made an argument similar to Mr. Lewis's argument on appeal. There, the plaintiffs argued on appeal that the defendant, GoAuto, could not have effectively canceled coverage of the insurance policy because the ten-day notice of cancellation was not sent by mail or delivered by the insurer as required by La. R.S. 22:1266. The plaintiffs argued that reliance on the notice sent by the

Thus, employing the rules of statutory construction, we find that since La. R.S. 9:3550 deals specifically with the cancellation of insurance policies procured through a premium finance agreement, it, and not La. R.S. 22:1226, is controlling in the present case. We accordingly find no merit to Mr. Lewis's argument that GoAuto was required to send a notice of cancellation by certified mail to Mr. Julien.

La. R.S. 9:3550(G) provides, in pertinent part:

G. Insurance contracts may be canceled upon default as follows:

(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract, or contracts, or endorsements listed in the agreement, the insurance contract, or contracts, or endorsements shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.

(2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records of the insurance premium finance company. In the event the default is timely cured, the premium finance company shall, within three business days from the time the default was cured, mail or send electronic notice of rescission of the cancellation notice to the insured, at his last known mailing or electronic address as shown on the records of the premium finance company and to all other parties who had previously been sent notice of cancellation. In the event the default is not timely cured as provided herein and the insurance policy is canceled pursuant to the terms of the insurance premium finance agreement, a copy of the notice of cancellation of the insurance contract shall also be sent to the insurance agent negotiating the related insurance contract whose name and place of business appears on the insurance premium finance agreement. Such notice of cancellation shall also state the name of any governmental agency, holder of a security interest in the insured property, or third party also requiring notice of cancellation as shown on the insurance premium finance agreement.

(3)(a) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance

---

premium finance company to the insured via email was misplaced since it was not compliant with the applicable requirements of law. The First Circuit disagreed, and in its analysis, the court applied La. R.S. 9:3550 to determine if there was an effective notice of cancellation. *Jones*, 224 So.3d at 417-419.

premium finance company may thereafter effect cancellation of such insurance contract, or contracts, or endorsements by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation, except when the payment has been returned uncollected, a copy of the notice of cancellation together with a statement certifying that:

(i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.

(ii) The premium finance agreement is in default and the default has not been timely cured.

(iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.

(iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.

(b)(i) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. ***The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.*** (Emphasis added.)

(ii) The time period between the date of the late notice and notice of cancellation was sent shall commence upon the date the late notice is sent.

(iii) Payment of an insurance premium installment by the insured, or on behalf of the insured, with a check or other instrument, which is returned to the premium finance company by the financial institution or other entity upon which it is drawn for insufficient funds available in the account, lack of credit, closed account, stopped payment, or for any other reason, shall be deemed grounds for the premium finance company to cancel the insurance policy pursuant to the terms of the

20-CA-152                                  7

> > power of attorney from the date the insurance policy could have been canceled upon default for nonpayment.
>
> > (c) The receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, holder of a security interest in the insured property, or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured, any governmental agency, holder of a security interest in the insured property, or third party to receive the notice of cancellation required by Paragraph (2) of this Subsection, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium and unearned commission to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.

The burden of proof is on the insurance company to show that the policy had been canceled prior to the date of the loss that gave rise to the denied claim. *Nions*, 62 So.3d at 219.

There must be strict compliance with the following conditions to allow cancellation of an insurance policy under La. R.S. 9:3550(G):

> (1) the debtor/insured has defaulted on the premium finance contract;
>
> (2) there is a power of attorney clause in the debtor's contract with the premium finance company;
>
> (3) the premium finance company has mailed notice of cancellation to the insured and the insured's insurance agent;
>
> (4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interested third party indicated by the policy; and
>
> (5) after a ten-day delay in which the debtor had not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer, with a statement certifying compliance with 9:3550(G)(3).

*KMJ Servs., Inc.*,115 So.3d at 37.

In the present case, the documents in support of GoAuto's motion for summary judgment demonstrate that GoAuto complied with La. R.S. 9:3550(G). The affidavit of Angela Pittman certified that on October 13, 2017, Mr. Julien signed a Consumer Insurance Premium Finance Agreement with APAC. The agreement stated that Mr. Julien would pay four equal payments of $142.00 on the 12th day of each month, commencing on November 12, 2017, and one payment of $141.00 on March 12, 2018. The agreement also included a power of attorney, in which Mr. Julien agreed that if he failed to pay "even one installment," APAC was authorized to cancel his insurance policy and notify his insurance company. Ms. Pittman attested that on January 13, 2018, she sent Mr. Julian an email to his last known email address that contained the Ten Day Notice of Cancellation. The Ten Day Notice of Cancellation stated that Mr. Julien's policy was canceled effective January 23, 2018 at 12:01 a.m. for nonpayment of an installment unless he remitted his balance of $227.00 before that date. After ten days, on January 23, 2018, pursuant to the requirements set forth in La. R.S. 9:3550(G)(3)(a), APAC sent a letter to GoAuto requesting that it cancel Mr. Julien's policy for non-payment of his monthly installment due under their premium finance agreement after he was notified on January 13, 2018. APAC certified in the letter that the premium finance agreement contained a valid power of attorney; the premium finance agreement was in default and the default had not been timely cured; upon default, a Ten Day Notice of Cancellation was sent to Mr. Julien and a copy of that notice was enclosed; and a copy of the Ten Day Notice of Cancellation was sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder.

Upon receipt of the notice of cancellation and certifying statement from APAC, GoAuto was to consider that "cancellation of the insurance contract … has been requested by the insured," and GoAuto could proceed with canceling the

policy. *See* La. R.S. 9:3550(G)(3)(b)(i). The effective date of cancellation was "12:01 a.m. on the tenth day after the date of sending of the notice of cancellation." *Id*. Accordingly, Mr. Julien's GoAuto policy was properly canceled on January 23, 2018 at 12:01 a.m.

Further, under La. R.S. 9:3550(G)(3)(c), upon its receipt of the notice of cancellation and certifying statement, GoAuto was entitled to the "conclusive presumption" that the facts stated in the notice and statement were correct. *Stephens*, 879 So.2d at 265.

Therefore, based on our *de novo* review, we find that there are no genuine issues of material fact that Mr. Julien's policy was canceled prior to the date of the subject accident, and that GoAuto is entitled to summary judgment as a matter of law.

<u>CONCLUSION</u>

Accordingly, we affirm the trial court's grant of summary judgment in favor of GoAuto, dismissing Mr. Lewis's suit against it with prejudice.

<u>**AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 16, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-152

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE (DISTRICT JUDGE)
VERCELL FIFFIE (APPELLANT)          DAVIS R. PELTIER (APPELLEE)          MICHELLE DELOACH BROOKS
                                                                        (APPELLEE)

**MAILED**
BOBBY J. TRICHE (APPELLEE)
ATTORNEY AT LAW
211 WEST FIFTH STREET
THIBODAUX, LA 70301